THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEWEL LEE and MEGAN TRAMA, for themselves, as private attorneys general, and/or on behalf of all others similarly situated,

Plaintiffs,

v.

NORDSTROM, INC.,

Defendant.

Case No.  2:25-cv-2180-TL

**PLAINTIFFS' OPPOSITION TO DEFENDANT NORDSTROM, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................................... 1

II.  BACKGROUND ......................................................................................................... 3

    A.   Procedural History ............................................................................................ 3

    B.   Nordstrom's One-Sided Arbitration Agreement ............................................. 4

    C.   There are Thousands of Arbitrable Claims. .................................................... 7

III. LEGAL STANDARD ................................................................................................. 8

IV.  ARGUMENT .............................................................................................................. 9

    A.   This Court determines the enforceability of Nordstrom's arbitration
         agreements. ........................................................................................................ 9

    B.   Nordstrom's Additional Procedures are unconscionable and unenforceable
         under applicable Washington contract law. .................................................. 10

         1.   The Additional Procedures are substantively unconscionable. ............. 10

         2.   The Additional Procedures are procedurally unconscionable. ............. 17

    C.   The entire arbitration agreement is unenforceable under the agreements'
         non-severability language . .............................................................................. 20

    D.   The arbitration agreement is unenforceable in its entirety for the additional
         reason that the unconscionable terms permeate. .......................................... 21

V.   CONCLUSION ......................................................................................................... 22

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-i-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Brown v. MHN Gov't Servs., Inc.*,
306 P.3d 948 (Wash. 2013) ...................................................................................... 18, 19, 20

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025) ......................................................................................................... 3

*Burnett v. Pagliacci Pizza, Inc.*,
442 P.3d 1267 (Wash. Ct. App. 2019) ................................................................................... 13

*Chalk v. T-Mobile, USA, Inc.*,
560 F.3d 1087 (9th Cir. 2009) ............................................................................................... 20

*Davis v. O'Melveny & Myers*,
485 F.3d 1066 (9th Cir. 2007) ............................................................................................... 13

*Eckstein v. E. Coast Facilities Inc.*,
No. C21-257 MJP, 2021 WL 3173044 (W.D. Wash. July 26, 2021) ...................................... 1

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .................................................................................................................. 8

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .................................................................................................................. 9

*Gandee v. LDL Freedom Enters., Inc.*,
293 P.3d 1197 (Wash. 2013) ...................................................................................... 8, 10, 21

*Gorden v. Lloyd Ward & Assocs., P.C.*,
323 P.3d 1074 (Wash. Ct. App. 2014) ................................................................................... 18

*Granite Rock Co. v. Int'l Bro. of Teamsters*,
561 U.S. 287 (2010) .................................................................................................................. 9

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-ii-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Haines v. Amazon.com Servs. LLC*,
766 F. Supp. 3d 1120 (W.D. Wash. 2025) ........................................................ 10

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) ................................................................. 1, 3, 5, 18

*Hill v. Garda CL Northwest, Inc.*,
308 P.3d 635 (Wash. 2013) ............................................................................. 22

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022)...................................................... passim

*Marshall v. Hipcamp Inc.*,
735 F. Supp. 3d 1283 (W.D. Wash. 2024) ....................................................... 13

*Mayne v. Monaco Enters., Inc.*,
361 P.3d 264 (Wash. Ct. App. 2015) ............................................................... 18

*Pandolfi v. AviaGames, Inc.*,
No. 23-cv-05971-EMC, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ....................... passim

*Pandolfi v. AviaGames, Inc.*,
No. 24-5817, 2025 WL 2463742 (9th Cir. Aug. 27, 2025)............................................. 2, 12

*Pokorny v. Quixtar*,
601 F.3d 987 (9th Cir. 2010) ............................................................................. 8

*Rios v. HRB Digit. LLC*,
807 F. Supp. 3d 975 (N.D. Cal. 2025)........................................................ passim

*Scott v. Cingular Wireless*,
161 P.3d 1000 (Wash. 2007) ........................................................................... 21

*Shroyer v. New Cingular Wireless Servs., Inc.*,
498 F.3d 976 (9th Cir. 2007) ........................................................................... 20

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180

-iii-

HATTIS LAW
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel. 425-658-9055 • Fax 425.412.7171

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Silva v. WhaleCo, Inc.*,
  No. 24-cv-02890-SK, 2024 WL 4487421 (N.D. Cal. Oct. 10, 2024) ................................. 12

*State v. Brown*,
  965 P.2d 1102 (Wash. Ct. App. 1998) ................................................................. 10

*Tadych v. Noble Ridge Constr., Inc.*,
  519 P.3d 199 (Wash. 2022) ............................................................................. 10

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) ..................................................................... 13

**Statutes**

9 U.S.C. § 2 .............................................................................................8

RCW 19.190 ............................................................................................3

RCW 19.190.100 .......................................................................................3

**Other Authorities**

Richard Frankel, *Fighting Mass Arbitration: An Empirical Study of the Corporate Response to Mass Arbitration and Its Implications for the Federal Arbitration Act*, 78 Vand. L. Rev. 133 (2025) ......................................................................................... 5

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION                    -iv-
Case No. 2:25-cv-2180

HATTIS LAW
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel. 425-658-9055 • Fax 425.412.7171

## I.    **<u>INTRODUCTION</u>**

After receiving multiple Nordstrom Rack marketing emails with false and misleading subject lines, Plaintiffs Jewel Lee and Megan Trama ("Plaintiffs") filed this action against Nordstrom alleging violations of Washington's Commercial Electronic Mail Act ("CEMA") and the Washington Consumer Protection Act ("WCPA"). Plaintiffs allege these violations on behalf of themselves and a putative nationwide class (and a Washington subclass) of consumers who likewise received the same false and misleading mass-marketing emails.

In the Ninth Circuit, it is well established that courts do not permit unconscionable, illusory, or one-sided arbitration agreements that fail to provide plaintiffs with a fair opportunity to prosecute their claims. *See, e.g., Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 688 (9th Cir. 2024) (holding that the defendant's "mass arbitration protocol" rendered its entire arbitration agreement unconscionable because plaintiffs were "[f]orced to accept Terms that can be changed without notice" and "arbitrate under . . . opaque and unfair [r]ules"), *cert. denied*, 146 S. Ct. 96 (2025); *Eckstein v. E. Coast Facilities Inc*., No. C21-257 MJP, 2021 WL 3173044, at *4 (W.D. Wash. July 26, 2021) (noting "Washington's fundamental policy in favor of protecting against enforcement of [procedurally or substantively] unconscionable arbitration agreements").

Here, Nordstrom moves this Court to compel arbitration of Plaintiffs' claims but fails to mention that the arbitration agreement it seeks to enforce includes one-sided and unconscionable requirements, called the "Additional Procedures for Mass Arbitration" (the "Additional Procedures"), which, by the agreement's own terms, are not severable from the rest of the arbitration agreement. *See* Dkt. No. 20-1 at ECF pp. 9-10; Dkt. No. 20-4 at ECF pp. 12-13. If any aspect of Nordstrom's Additional Procedures is unconscionable, then the agreement provides that the entirety of the arbitration agreement is unenforceable.

Nordstrom's Additional Procedures require Plaintiffs and other consumers represented by the same or coordinated counsel to endure years-long delays in even ***starting*** to prosecute their claims. Plaintiffs' counsel in this case currently represent a total of 1,957 clients with the

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-1-

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

same CEMA-based claims against Nordstrom. *See* Declaration of Daniel M. Hattis I.S.O. Opp'n To Mot. To Compel Arbitration, filed herewith ("Hattis Decl.") ¶ 11. Nordstrom's Additional Procedures would prevent most of these consumers—in this case, 1,657 of the 1,957 people represented by Plaintiffs' counsel here—from ever being able to file their claims in arbitration at all.

Instead, under the Additional Procedures, the 1,657 consumers who are not selected to participate in the two "stages" of Nordstrom's arbitration batching process (which would include Plaintiffs Jewell Lee and Megan Trama if they are not among the 300 selected) will have to wait out the proceedings—which will take at least three years to complete—after which their claims will be automatically opted out of arbitration such that those 1,657 consumers must then go **back to court** to pursue their claims. *See* Hattis Decl. ¶¶ 13-17. Indeed, for the 1,657 consumers who are not selected as part of the first 300 in the batching process, Nordstrom's arbitration agreement is actually an agreement **not** to arbitrate.

Nordstrom's Additional Procedures seek to deny consumers both their day in court *and* the oft-cited benefits of consumer arbitration: speed and efficiency. Nordstrom gives consumers no way to avoid this byzantine and one-sided system without forfeiting their right to choose their own counsel. The Additional Procedures are designed to serve one party's interests—Nordstrom.

Nordstrom's Additional Procedures are exactly the kind of one-sided, overly oppressive terms courts find unconscionable and decline to enforce. Indeed, the Ninth Circuit has found that similar procedures are both substantively and procedurally unconscionable. *See Pandolfi v. AviaGames, Inc.*, No. 23-cv-05971-EMC, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ("*Pandolfi I*"), *aff'd*, No. 24-5817, 2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025) ("*Pandolfi II*"). District courts within this Circuit have likewise found unenforceable similar procedures. *See, e.g.*, *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1041 (N.D. Cal. 2022); *Rios v. HRB Digit. LLC*, 807 F. Supp. 3d 975, 989-992 (N.D. Cal. 2025), *app. pend.* This Court should do the same.

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION            -2-
Case No. 2:25-cv-2180-TL

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Nordstrom's unconscionable Additional Procedures (and "each of its requirements") are "essential parts of this arbitration agreement" that cannot be severed, under the express terms of Nordstrom's arbitration agreement. *See* Dkt. No. 20-1 at ECF p. 10; Dkt. No. 20-4 at ECF p. 13. Therefore, the unenforceability of the Additional Procedures "serve to make the entire agreement unconscionable, both procedurally and substantively." *See Heckman*, 120 F.4th at 688. The entire arbitration agreement is void, and these claims must now proceed in Court.

The Court should deny Nordstrom's motion to compel in its entirety.

## II.      BACKGROUND

### A.       Procedural History

Nordstrom Rack, which is presented to consumers as the budget retail brand of Nordstrom, Inc., sends customers emails with attention-grabbing subject lines that Plaintiffs allege falsely and/or misleadingly advertise discounts or limited-time sales when in fact the products in question are always or virtually always "on sale." By design, these emails drive urgency and convince individuals to browse the site and make purchases while the supposed "sales" are live. Complaint ("Compl.") ¶¶ 20-29, Dkt. No. 1-2.

This method of advertising is unlawful in Washington. CEMA forbids sending marketing emails with false or misleading subject lines. RCW 19.190; Compl. ¶¶ 45-48, 91-95. Further, each violation of CEMA is also a *per se* violation of the WCPA. RCW 19.190.100; Compl. ¶¶ 60-81; *Brown v. Old Navy, LLC*, 567 P.3d 38, 45 (Wash. 2025). The Washington Supreme Court recently confirmed that CEMA "prohibits . . . commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Brown*, 567 P.3d at 47 (emphasis in original). Plaintiffs seek statutory damages, actual damages, treble damages, attorneys' fees and costs, and public injunctive relief under CEMA and the WCPA. Compl. ¶¶ 82-90.

Plaintiffs filed this putative class action on October 8, 2025, in King County Superior Court. Compl. 1.

On October 22, 2025, Plaintiffs' counsel sent Nordstrom a Notice of Disputes letter on

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-3-

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

behalf of 680 other clients, all of whom are consumers who fall within the Class and/or the Washington State Subclass defined in the Complaint. *See* Hattis Decl. ¶ 12 n.1. On March 11, 2026, Plaintiffs' counsel sent Nordstrom a second Notice of Disputes letter on behalf of 1,275 additional clients who fall within the Class or Washington State Subclass, bringing to 1,957 the current total number of clients (including the two named Plaintiffs) whom Plaintiffs' counsel represent who seek to pursue CEMA claims against Nordstrom. *Id.*

As of March 11, 2026, Plaintiffs' counsel has been contacted by an additional 4,858 prospective clients who have requested representation regarding potential CEMA claims; Plaintiffs' counsel is currently vetting those other prospective clients. *See* Hattis Decl. ¶ 12 n.1.

On November 3, 2025, Nordstrom removed this action to this Court. *See* Notice of Removal, Dkt. No. 1-1. Nordstrom moved to compel arbitration of Plaintiffs' claims on December 10, 2025. *See* Dkt. No. 18 ("Mot.").

**B.      Nordstrom's One-Sided Arbitration Agreement**

Nordstrom's motion is based on the arbitration agreement located in its Nordstrom Rack Terms & Conditions (Dkt. No. 20-1) and Nordy Club Terms & Conditions (Dkt. No. 20-4). Nordstrom asserts that Plaintiffs agreed to the Nordstrom Rack Terms & Conditions by signing into their accounts on Nordstrom Rack's website and making purchases after February 2024. Dkt. No. 18 at 10, 16. Nordstrom further asserts that Plaintiffs enrolled as "member[s] of the Nordy Club" in 2016 and 2013, respectively, and thus accepted the Nordy Club Terms & Conditions at that time. Dkt. No. 19 ¶ 4, 6.[1]

The two contracts that Nordstrom seeks to invoke contain substantively identical

---

[1] A Nordstrom press release states that Nordstrom's Nordy Club "launched" *in 2018*, which would appear to contradict Nordstrom's factual assertion here regarding Plaintiffs' consent to Nordy Club terms *in 2016 and 2013*. *See Welcome to The Nordy Club*, Nordstrom Press Room (Sep. 13, 2018), https://press.nordstrom.com/news-releases/news-release-details/welcome-nordy-club/; *see also* David Moin, *On Storytelling, Selling Tools, and Strengthening Customer 'Engagements,'* Women's Wear Daily (Sep. 13, 2021, 3:00 PM), https://wwd.com/business-news/retail/feature/nordstrom-marketing-stylists-1234902920/.

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-4-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

arbitration agreements. Both of the agreements will thus be referred to herein as "Nordstrom's arbitration agreement" unless there is a need to specify one or the other.

Nordstrom's arbitration agreement includes a clause called "Additional Procedures for Mass Arbitrations" (herein "Additional Procedures"). Nordstrom's arbitration agreement contains a number of unconscionable provisions, including provisions related to claims suppression, delay, limits on the right to counsel, non-mutuality, unilateral changes, and unenforceability.

Claim Suppression: Scholars have concluded that "companies have adapted their arbitration provisions to try and squelch mass arbitration." *See, e.g.*, Richard Frankel, *Fighting Mass Arbitration: An Empirical Study of the Corporate Response to Mass Arbitration and Its Implications for the Federal Arbitration Act*, 78 Vand. L. Rev. 133, 162-67 (2025) (discussing Nordstrom's arbitration provision and the "claim-suppressing effects" of batching provisions such as Nordstrom's); *see also Heckman*, 120 F.4th at 677 (discussing the defendant's use of an unconscionable mass arbitration protocol as a "critical prophylactic measure" to combat "mass arbitration risk").

Here, Nordstrom's Additional Procedures inherently preclude more than 300 claims in arbitration and may deter claimants from even filing. The Additional Procedures involve a batched dispute resolution process, which—by design—limits the number of claimants at each stage and creates a hard cap of 300 claimants. In fact, the Additional Procedures function as a way for Nordstrom to **prevent** 1,657 of Plaintiffs' counsel's clients from being able to ever arbitrate their claims against Nordstrom at all.

The batched proceedings are structured as follows: The Additional Procedures apply when 25 or more "similar" disputes are filed by claimants with the same or coordinated counsel. Dkt. No. 20-1 at ECF p. 9; Dkt. No. 20-4 at ECF pp. 12-13. Stage One of the process involves individual arbitration for 100 claimants. Dkt. No. 20-1 at ECF pp. 9-10; Dkt. No. 20-4 at ECF p. 13. After *all* 100 arbitrations are completed, there is a global mediation. *Id.* Once that concludes,

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL                    -5-                    **HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Stage Two commences with another 200 individual arbitrations. *Id.* After all of these 200 individual arbitrations are completed, there is *another* global mediation. *Id.* If the global mediation fails to resolve all remaining cases, the rest of the claimants represented by that counsel are automatically opted out of arbitration and proceed in a court of competent jurisdiction (i.e., where they are now). *Id.*

Delay: These same batched proceedings—by design—entail significant delay. There are no requirements in Nordstrom's Additional Procedures that arbitration and mediation proceed at any particular pace; should they take years—and they likely will—claimants have no recourse. Here, Nordstrom's Additional Procedures would force all but 100 of Plaintiffs' counsel's clients to wait years to even start prosecuting their claims, and all but 300 of them (more than 1,600 consumers) to wait even longer, likely three years or more. *See* Hattis Decl. ¶¶ 18-30 (detailing timeline and delays).

Limits on the Right to Counsel: Nordstrom's Additional Procedures—by design—impede claimants' right to choose their own counsel because they specifically apply to "similar" disputes filed by claimants with the same or coordinated counsel.

Non-Mutuality: Nordstrom's Additional Procedures are facially non-mutual: they impose restrictions only on consumers bringing claims, not on Nordstrom. *See generally* Dkt. No. 20-1 at ECF pp. 9-10; Dkt. No. 20-4 at ECF pp. 11-13.

Unilateral Changes: Nordstrom's Additional Procedures are part of a contract of adhesion. For consumers to create a Nordy Club account or log into the Nordstrom website, they are required to click a button indicating their assent to the Terms and Conditions. Mot. at 6. There is no ability to negotiate these Terms and Conditions. Instead, Nordstrom retains the right to change the terms at any time, with modifications "effective immediately upon being posted on the Site." Dkt. No. 20-1 at ECF p. 11; Dkt. No. 20-4 at ECF p. 2. Consumers have 30 days from the time the changes are posted to opt out of the updated arbitration provision, but even if they do opt-out, they remain bound by the *previous* version of the arbitration provision. Dkt. No. 20-1

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-6-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

at ECF p. 10; Dkt. No. 20-4 at ECF p. 13. Here, Nordstrom has unilaterally changed its arbitration agreement. For example, there is no evidence that Nordstrom had any mass arbitration procedure at the time that it alleges Plaintiffs enrolled in the Nordy Club.[2] Rather, Nordstrom unilaterally changed the terms of its arbitration agreement to add the Additional Procedures.

Non-Severability and Unenforceability: The plain terms of the Additional Procedures contemplate that they may be found unenforceable by a court. And both arbitration agreements include express language providing that, if the Additional Procedures or any requirement thereof are deemed unenforceable, the *entire* arbitration agreement is unenforceable and the claims instead "shall only proceed in a court of competent jurisdiction consistent with the remainder of the Terms." Dkt. No. 20-1 at ECF pp. 9-10; *see also* Dkt. No. 20-4 at ECF pp. 12-13 ("Program Rules").

**C.     There are Thousands of Arbitrable Claims.**

Nordstrom's motion fails to mention that hundreds (and now thousands) of consumers have stepped forward to register their dissatisfaction with Nordstrom's allegedly false and/or misleading emails.

As set forth above, Plaintiffs' counsel has already sent Nordstrom notice of behalf of 1,957 consumers they represent, who fall within the Class and/or the Washington State Subclass defined in the Complaint and wish to pursue the same CEMA-based claims against Nordstrom. *See* Hattis Decl. ¶ 12 n.1. Moreover, as of March 11, 2026, Plaintiffs' counsel has also been contacted by an additional 4,858 prospective clients who have requested representation regarding potential CEMA claims. *See* Hattis Decl. ¶ 12 n.1.

Under the dispute resolution process mandated by the Additional Procedures, it would be impossible for all but 300 of these thousands of consumer claims to be resolved in private

---

[2] *See Terms & Conditions*, Nordstrom Fashion Rewards, https://web.archive.org/web/20130524011021/http:/shop.nordstrom.com/c/rewards-terms-conditions?origin=footer (containing no such mass arbitration clause).

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION                    -7-
Case No. 2:25-cv-2180-TL

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

arbitration. The rest will have to wait years to even start pursing their claims—and they then could only do so *back in court*.

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") instructs "federal courts to enforce arbitration agreements according to their terms," but contains a savings clause. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 507-08 (2018). Under the FAA's savings clause, "agreements to arbitrate [may be] invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 507 (quoting *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011)); *see also* 9 U.S.C. § 2 ("A written provision in any . . . contract . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."). In evaluating whether a particular provision is invalid because of unconscionability, the Court must examine the "provision as of the time of the contract is made – it is a prospective analysis which does not require proof that a particular plaintiff has already been adversely affected." *MacClelland*, 609 F. Supp. 3d at 1041 (citing *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (9th Cir. 1979)).

Federal courts apply state contract law to determine the enforceability of an arbitration agreement. *Pokorny v. Quixtar*, 601 F.3d 987, 994 (9th Cir. 2010). Here, Washington State contract law applies under the express terms of both contracts Nordstrom seeks to enforce. *See* Dkt. No. 20-1 at ECF p. 11 ("The law applicable to the interpretation and construction of these Terms and any transaction . . . using or related to the Site, shall be . . . the laws of the State of Washington, USA, without regard to principles of conflict of laws"); Dkt. No. 20-4 at ECF p. 10 ("These Program Rules are governed by the laws of the State of Washington, without regard to any conflict of law provisions.").

Under Washington law, "*either* substantive *or* procedural unconscionability is sufficient to void a contract." *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013)

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION                    -8-
Case No. 2:25-cv-2180-TL

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

(emphasis added).

## IV.    ARGUMENT

Under applicable law and the express terms of the agreement, the Court should decline to enforce Nordstrom's arbitration agreement.

First, this Court determines the enforceability of the arbitration agreement, which expressly assigns that determination to the Court (and not to an arbitrator).

Second, the arbitration agreement contains the drastically one-sided and overly harsh Additional Procedures clause, which is substantively and procedurally unconscionable, and thus unenforceable, under Washington law.

Third, the arbitration agreement also includes express non-severability language, pursuant to which, if the Additional Procedures (or any of its procedures) are determined to be unenforceable, the entire arbitration agreement is rendered unenforceable and the claims must proceed in a court (and not in arbitration).

### A.    This Court determines the enforceability of Nordstrom's arbitration agreements.

"[A] court may submit to arbitration only those disputes . . . [that] the parties have agreed to submit." *Granite Rock Co. v. Int'l Bro. of Teamsters*, 561 U.S. 287, 302 (2010) (quotation marks omitted). Under well-settled law, a court determines the enforceability of an arbitration agreement absent "clear and unmistakable evidence" that the parties agreed to instead delegate the issue to an arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

The parties here did not agree to delegate enforceability; to the contrary, both the Nordstrom Rack Terms and Conditions (Dkt. No. 20-1 at ECF p. 7) and Nordy Club Terms and Conditions (Dkt. No. 20-4 at ECF pp. 10-11) expressly reserve "issues that relate to the scope, validity, and enforceability of the arbitration agreement, class action waiver, or any of the provisions of this Dispute resolution section" to "a court of competent jurisdiction." Accordingly, determining enforceability here is squarely within this Court's jurisdiction.

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION                    -9-
Case No. 2:25-cv-2180-TL

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**B.      Nordstrom's Additional Procedures are unconscionable and unenforceable under applicable Washington contract law.**

Under applicable Washington law, "*either* substantive *or* procedural unconscionability is sufficient to void a contract." *Gandee*, 293 P.3d at 1199 (emphasis added) (citation omitted). In evaluating whether a provision is unconscionable, courts "consider the circumstances at the time the contract was made." *State v. Brown*, 965 P.2d 1102, 1110 (Wash. Ct. App. 1998) (citing *Jeffery v. Weintraub*, 648 P.2d 914, 919 (Wash. 1982)). Nordstrom's Additional Procedures are both substantively and procedurally unconscionable, and thus are unenforceable. They are substantively unconscionable because they (1) contain harsh and one-sided terms that lack mutuality, (2) suppress and significantly delay claims, and (3) limit claimants' right to counsel. They are procedurally unconscionable because they (1) are contracts of adhesion with a unilateral right to change for Nordstrom only, and (2) do not even specify which rules will govern any arbitration.

**1.      The Additional Procedures are substantively unconscionable.**

Under Washington law, a contract provision is substantively unconscionable if any of the following apply: "it is one-sided or overly harsh, shocking to the conscience, monstrously harsh, or exceedingly calloused." *Tadych v. Noble Ridge Constr., Inc.*, 519 P.3d 199, 202 (Wash. 2022) (internal quotations omitted); *Haines v. Amazon.com Servs. LLC*, 766 F. Supp. 3d 1120, 1127 (W.D. Wash. 2025) (same). This determination must be made by reference to the time when the contract was made and cannot be resolved by hindsight. *Gandee*, 293 P.3d at 1202 (refusing to accept the defendant's post-appellate offer to waive unconscionable provision as meaningless and contrary to the "general approach to view the contractual terms at the time of formation").

Nordstrom's Additional Procedures are substantively unconscionable. By design, they suppress claims and impose extreme delays for consumers who file disputes against Nordstrom that are "similar" to 24 or more other disputes filed by claimants with the same or coordinated counsel. *See* Dkt. No. 20-1 at ECF p. 9. This clause, on its face, also plainly interferes with

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION                              -10-
Case No. 2:25-cv-2180-TL

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

consumers' right to choose their own counsel. The result of the Additional Procedures is that consumers seeking to hire experienced counsel to pursue claims against Nordstrom find themselves subject to Nordstrom's unconscionable Additional Procedures and must face extreme delays in having their claims heard, simply because their attorney (or their attorney and coordinated counsel) happens to represent 24 or more other clients with a similar dispute. To wit, here, at least 1,657 clients represented by Plaintiffs' lawyers will have to wait likely *multiple years* to even begin to pursue their claims. *See* Hattis Decl. ¶¶ 15-17.

First, there will be a likely delay of one year or more before the first batch of 100 merits arbitrations even begins, as a result of administrative issues and procedural disputes that must be resolved first. Hattis Decl. ¶¶ 20-25 & Ex. B While disputes are pending before the process arbitrator, the individual merits arbitrators are not even appointed, preventing the first (or any) batch of merits arbitrations from proceeding. *Id.*

Only then, after this likely lengthy delay resulting from procedural disputes, can the first batch of 100 individual arbitrations against Nordstrom proceed to the merits arbitrators. At that point, pursuant to Nordstrom's Additional Procedures, the parties would then be subjected to "staged" proceedings. Dkt. No. 20-1 at ECF p. 9; Dkt. No. 20-4 at ECF p. 13. First, counsel for the two sides must each select 50 claimants to proceed in individual arbitrations in a first "stage." *Id.* In the meantime, all other claimants not chosen for this first "stage" (here, at least 1,857 claimants) must wait on the sidelines (and not even submit arbitration demands) until this first stage of 100 individual arbitrations is entirely completed. Dkt. No. 20-1 at ECF pp. 9-10; Dkt. No. 20-4 at ECF p. 13.

After the first "stage" of arbitrations is completed, the parties must then engage in a global mediation session. Dkt. No. 20-1 at ECF p. 10; Dkt. No. 20-4 at ECF p. 13. If the disputes are not resolved in that global mediation, there must then be a second "stage" of arbitrations, where counsel for each side must select 100 claimants to proceed in the second "stage" of individual arbitrations. *Id.* Again, those claimants not selected for this "stage" (here, at least

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-11-

1,657 claimants) must *continue* to wait on the sidelines until these 200 individual arbitrations, too, are completed in their entirety. *Id.* And then after the second "stage" arbitrations are completed, the parties are required to engage in yet another global mediation session. *Id.* Only after all of those arbitrations and mediations—which collectively will take years to complete (which does not even include the preceding long delay due to procedural disputes)—may the remaining claimants even begin to pursue their claims—ironically, in court. *Id.*

Nordstrom's Additional Procedures provide no "recourse, oversight, or other accountability procedures in the event of a delay by an arbitrator," as this staged process "operates in sequential rounds, such that no new tranche of arbitration claims may be filed until *every* case in the prior round has been completed." *See, e.g.*, *Rios*, 807 F. Supp. 3d at 990 (finding staged arbitration process unconscionable). As in *Rios v. HRB Digital LLC*, "any delay in one arbitration halts progress for all remaining claimants and would-be claimants who are barred from filing until their turn arrives." *See id.*

When considering a similar mandated process, the Ninth Circuit squarely held that "the batching provision[] is substantively unconscionable because it could create lengthy delays to resolve a gateway issue; those delays could have a chilling effect on players bringing claims to begin with; and the delays and chilling effects would likely only apply to claims brought by [the plaintiffs], not [the defendant]." *Pandolfi II*, 2025 WL 2463742, at *1. District courts in this Circuit have likewise found similar onerous procedures unconscionable and unenforceable. *See, e.g. Pandolfi I*, 2024 WL 4051754, at *3; *MacClelland,* 609 F. Supp. 3d at 1041; *Rios*, 807 F. Supp. 3d at 989-92; *see also Silva v. WhaleCo, Inc.*, No. 24-cv-02890-SK, 2024 WL 4487421, at *5 (N.D. Cal. Oct. 10, 2024) (distinguishing unconscionable "bellwether" mass arbitration provisions where, as here, litigants cannot pursue claims until earlier groups resolve theirs from permissible "concurrent batching" which does not cause the same delay).

While these cases applied California law for the purposes of determining unconscionability, California and Washington's "consumer protection laws and protections

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-12-

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

against unconscionable contracts appear to be substantially similar." *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863 (9th Cir. 2017) (finding distinctions between the states' approaches irrelevant because they yield same result); *see also Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1079 n.6 (9th Cir. 2007) ("California and Washington law incorporate similar principles in analyzing the unconscionability of arbitration agreements."), *overruling on other grounds recognized, Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937 (9th Cir. 2013); *Marshall v. Hipcamp Inc.*, 735 F. Supp. 3d 1283, 1292 (W.D. Wash. 2024) ("[T]here is also no actual conflict between Washington's, Oregon's, and California's unconscionability analysis.").

Nordstrom's Additional Procedures are unconscionable for multiple reasons, including because they cause substantial and undue delay in consumers having their claims heard, are likely to have a significant chilling effect on plaintiffs seeking to vindicate their rights, lack mutuality, and hinder plaintiffs from exercising their right to select their own counsel. *MacClelland*, 609 F. Supp. 3d at 1040-45; *Pandolfi I*, 2024 WL 4051754 at *11, *aff'd*, 2025 WL 2463742 at *1; *Rios*, 807 F. Supp. 3d at 989-92.

### a. The Additional Procedures are one-sided on their face and benefit only Nordstrom in practice.

Nordstrom's Additional Procedures are facially non-mutual in that they only impose restrictions on consumers bringing claims, and not on Nordstrom. Non-mutual obligations are unconscionable if the obligations have the effect of limiting the obliged party's ability to access substantive remedies or discouraging that party from pursuing valid claims. *See Burnett v. Pagliacci Pizza, Inc.*, 442 P.3d 1267, 1278 (Wash. Ct. App. 2019), *aff'd sub nom., Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486 (Wash. 2020).

Nordstrom's Additional Procedures apply to any consumer that "bring[s] your Dispute as part of a Mass Arbitration," which is defined as one of "twenty-five (25) or more similar Disputes (including yours) . . . asserted against Nordstrom by the same or coordinated counsel or are otherwise coordinated." Dkt. No. 20-1 at ECF p. 9; Dkt. No. 20-4 at ECF p. 12. Nordstrom's

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-13-

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

general arbitration provisions (i.e., that apply outside of the defined "Mass Arbitration" context), by contrast, require either "party seeking to initiate arbitration" to follow certain different procedures. Dkt. No. 20-1 at ECF p. 8, Dkt. No. 20-4 at ECF p. 11.

There is "no apparent justification" for this "built-in asymmetry." *See Pandolfi I*, 2024 WL 4051754 at *7; *Rios*, 807 F. Supp. 3d at 993 ("asymmetrical tolling provisions" result in "precisely the 'harsh' or 'one-sided' outcome that courts seek to prevent."). The Additional Procedures further delay and complicate claimants' and potential claimants' ability to bring a claim against Nordstrom and by design discourage claims, while not even purporting to apply to any disputes raised by Nordstrom.

### b. The Additional Procedures cause significant and unconscionable delay for consumers.

Enforcing Nordstrom's Additional Procedures would drastically delay consumers' ability to have their claims against Nordstrom heard, as evidenced by the circumstances in this very case, where if the clause were enforced, at least 1,657 consumers with these same claims against Nordstrom would have to wait on the sidelines for years while Nordstrom's multi-stage procedures played out, before even starting to pursue their claims. *See* Hattis Decl. ¶¶ 10-17, 21-30.

Not by coincidence, the Additional Procedures' bellwether-style arbitration "stages" will also no doubt discourage many other consumers from even bringing claims at all, given the extensive delay they would face. *See Rios*, 807 F. Supp. 3d at 990 (finding that delays caused by a mass arbitration provision "create[] the risk of de facto waiver of valid claims, weighing heavily in favor of finding substantive unconscionability"). As the *MacClelland v. Cellco Partnership* court held, it is unconscionable to require "consumers who retain counsel willing to represent them in cases such as this to wait months, more likely years before they can even submit a demand for arbitration." 609 F. Supp. 3d at 1042.

Similarly, in *Pandolfi v. AviaGames, Inc.*, the Court found that at the time of contract

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-14-

formation, it was "predictable that a player could have a dispute with Avia [a video game company] based on a company policy that applies across-the-board to *all* players, as occurred here, and will be caught up by the bellwether provision." *Pandolfi I*, 2024 WL 4051754 at *6. Here, too, it was entirely predictable that issues would arise that would affect well over the number of Nordstrom customers that would be needed to implicate the Additional Procedures and staged process. In 2021, Nordstrom's Nordy Club loyalty program alone had more than 13 million members.[3]

Plaintiffs' counsel here have already been retained by 1,957 clients, including Ms. Lee and Ms. Trama, and have been contacted by an additional 4,858 potential clients with identical or similar potential claims against Nordstrom. *See* Hattis Decl. ¶¶ 11-12 & n.1. Under Nordstrom's Additional Procedures, all but 100 of the consumers represented by the same counsel would have to wait a very long time before proceeding with their claims at all, and all but 300 of them would have to wait even longer—only to return to court.

The Additional Procedures require that each "Stage One" arbitration proceed before a unique arbitrator, meaning that AAA will have to assign 100 individual arbitrators just for Stage One. Dkt. No. 20-1 at ECF pp. 9-10; Dkt. No. 20-4 at ECF p. 13. Given that the AAA reported that its *median* consumer arbitration took 8.5 months to reach an award in 2024,[4] the first "stage" of 100 arbitrations alone would likely take well over a year—followed by a mandatory global mediation that would delay matters for another few months. *Id.* Then, in the 200 "Stage Two" arbitrations that follow, no more than five arbitrations may be assigned to a single arbitrator, thus requiring at least 40 unique arbitrators. *Id.* This would likely take at least another year, followed

---

[3] Moin, *On Storytelling*, supra note 1. Notably, however, this article and Nordstrom's own press release state that Nordstrom's Nordy Club "launched" in 2018, contradicting paragraphs 4 and 6 of Nordstrom's Declaration of Thomas Savage (Dkt. No. 19), which claim that Ms. Lee and Ms. Trama enrolled as "member[s] of the Nordy Club" in 2016 and 2013 respectively. *See Welcome to The Nordy Club*, supra note 1.

[4] *See* Hattis Decl. Ex. C (citing American Arbitration Association, *Infographic: Consumer Dispute Resolution 2024* (2025)).

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-15-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

by another delay for a second mandatory global mediation. *Id.* The two sequential sets of arbitrations would thus take years—and that does not even include the preceding long delay due to procedural disputes before a process arbitrator. *See* Hattis Decl. ¶¶ 20-25. Meanwhile, as this process proceeds, the 1,657 consumers who are not among the 300 selected to participate in the arbitrations are forced to wait on the sidelines before they can even begin to start prosecuting their claims.

In short, if the Additional Procedures were enforced here, at least 1,657 consumers will face years of delay in having their claims adjudicated. This manufactured delay "conflict[s] with one of the basic principles of our legal system," that "justice delayed is justice denied," and renders the clause substantively unconscionable. *MacClelland*, 609 F. Supp. 3d at 1042 (quoting *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021)).

### c. The Additional Procedures hamper consumers' right to the counsel of their choice, while permitting Nordstrom to hire the counsel of its choice.

Nordstrom's Additional Procedures apply when a consumer's counsel either represents 24 or more other consumers with similar disputes or is coordinated with other counsel who represent 24 or more other consumers with similar disputes; when the lawyer is retained by the 25th consumer, the Additional Procedures are triggered. Dkt. No. 20-1 at ECF p. 9; Dkt. No. 20-4 at ECF pp. 12-13.

To avoid triggering the Additional Procedures, consumers "would have to find different counsel, which affects the right to counsel of their choice." *Pandolfi I*, 2024 WL 4051754, at *11; *see also Rios*, 807 F. Supp. 3d at 991 ("By automatically imposing the bellwether procedure anytime 25 or more claimants are represented by the same or coordinated counsel, the mass arbitration provision may . . . [f]orc[e] claimants to avoid experienced counsel in favor of less qualified or experienced representation . . . to sidestep mass arbitration delays," which imposes an "unjustifiable cost manufactured by [defendant] for its sole benefit.").

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-16-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Worse yet, as the *Pandolfi I* court noted with regard to the similar mass arbitration procedures at issue in that case, consumers hoping to avoid the needlessly Kafkaesque Additional Procedures here may find that looking for counsel who represents no other or a small number of similarly situated clients impacts their "ability to find any counsel at all." 2024 WL 4051754, at \*11 (citing Fed. R. Civ. P. 23(b)(3), 1966 Advisory Committee Notes (recognizing with respect to the interest of individuals in conducting separate lawsuits, the "amounts at stake for individuals may be so small that separate suits would be impracticable")). This is especially true where, as here, to avoid the onerous Additional Procedures claims, consumers must not only avoid counsel representing other clients with similar claims, but also avoid counsel ***coordinated with*** other attorneys working on similar disputes against Nordstrom.

Consumers are thus faced with the choice of: (a) finding new counsel (if they can even find another counsel to represent them under these circumstances and limitations) and giving up the benefits that come with having counsel that has litigated/arbitrated many other suits about this subject matter; (b) sticking with their counsel of choice and being sorted into "stages" and waiting up to several years to have their claims heard; or (c) declining to pursue their claims at all because of the burdens, disadvantages, and restrictions imposed by the Additional Procedures.

Meanwhile, Nordstrom remains "apparently free to select the same law firm to represent it in all of its arbitrations" and "is thus able to enjoy all of the advantages that come from being a 'repeat player,' while law firms that represent twenty-five or more" of Nordstrom's customers "may be forced to sideline any clients which would exceed the numeric cap." *MacClelland*, 609 F. Supp. 3d at 1042-43. Nordstrom can select counsel with expertise and use that counsel's expertise across all of its related suits without facing any kind of delay or penalty for doing so. This is precisely the kind of one-sided, unduly oppressive provision that is unconscionable.

**2.      The Additional Procedures are procedurally unconscionable.**

Procedural unconscionability concerns "the manner in which the contract was negotiated,

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-17-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

focusing on oppression or surprise." *Gorden v. Lloyd Ward & Assocs., P.C.*, 323 P.3d 1074, 1079 (Wash. Ct. App. 2014); *Brown v. MHN Gov't Servs., Inc.*, 306 P.3d 948, 954 (Wash. 2013) (en banc). Courts evaluating whether procedural unconscionability is present consider "the manner in which the contract was created, whether both parties had a reasonable opportunity to understand the terms of the agreement, and whether important terms were buried in a lot of fine print." *Mayne v. Monaco Enters., Inc.*, 361 P.3d 264, 267 (Wash. Ct. App. 2015) (citation omitted). The Additional Procedures here are procedurally unconscionable.

### a. The Additional Procedures are contracts of adhesion that Nordstrom alone can change unilaterally.

The agreements in which the Additional Procedures reside—i.e., the Nordstrom Rack Terms and Conditions and the Nordy Club Terms and Conditions—are both contracts of adhesion. For Plaintiffs and other consumers to create a Nordy Club account or sign into their account on the Nordstrom Rack website, they were "required to affirmatively click on an action button after being informed that, by doing so, they are agreeing to Nordstrom's Terms & Conditions and Privacy Policy." Mot. at 6. They had no opportunity to negotiate or alter the terms of these form contracts, including its arbitration clause, at the time of contract formation (or otherwise). Meanwhile, Nordstrom retained the unilateral right to change the terms at any time, Dkt. No. 20-1 at ECF p. 11; Dkt. No. 20-4 at ECF p. 2, and such modifications are "effective immediately upon being posted to the site," Dkt. No. 20-1 at ECF p. 11. Consumers could opt out of *changes* to the arbitration provision—but not the arbitration provision as it existed before a change—only if they do so within 30 days of Nordstrom posting the change. Dkt. No. 20-1 at ECF p. 10; Dkt. No. 20-4 at ECF p. 13.

Precisely this combination of (1) a unilateral reservation of rights to change terms with (2) new terms taking immediate effect, resulted in the Ninth Circuit finding procedurally unconscionability in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th at 682-83. There, any updates to Ticketmaster's terms "bec[a]me 'effective immediately when [Ticketmaster

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-18-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

post[ed]] a revised version of the Terms on the Site," and a consumer needed only to continue to use the site after the terms are posted to agree to those new terms. *Id*. at 678. The court found such a provision "particularly disadvantageous to consumers because they often revisit the site in order to use previously purchased digital tickets. It is thus nearly impossible to avoid retroactive application of any changes Ticketmaster imposes." *Id.* The Nordstrom terms in this case are even more egregious: whether or not a consumer visits the site—or even has notice of the change to the terms—is entirely irrelevant to Nordstrom's assessment of whether the terms are binding. The only relevant inquiry for Nordstrom is whether a consumer properly opted out of changes to the terms within 30 days of the change being posted. Only an exceedingly unusual consumer, if any, would be sure to log into a website every 29 days to be sure no new terms bound them.

### b.    The Additional Procedures do not specify which rules apply.

Nordstrom's terms fail to specify a specific set of AAA rules that would govern an arbitration. *See MHN Gov't Servs., Inc*., 306 P.3d 948, 954 (Wash. 2013). As noted in *Brown v. MHN Government Services, Inc.*, "The AAA has upward of 20 sets of both industry-specific and general categories of rules. Generally, arbitration agreements specify which rules will apply or the parties agree on a set of rules if the case clearly fits in one category or another." *Id.*  Here, Nordstrom only provides that any arbitration be "conducted in accordance with the applicable AAA rules ('AAA Rules') as modified by this arbitration agreement." Dkt. No. 20-1 at ECF p. 8; Dkt. No. 20-4 at ECF p. 11. The procedures and fees for arbitration under the AAA vary greatly across the AAA's sets of rules, and where the drafter of an adhesion contract fails to specify which apply, customers cannot understand what they are agreeing to, let alone make a meaningful choice. Nordstrom's customers are given no more information than the plaintiffs in *MHN Government Services, Inc.* and cannot know which sets of AAA rules Nordstrom wishes to apply. There is substantial uncertainty created by Nordstrom's failure to specify the applicable AAA rules, causing ordinary consumers bringing a dispute against Nordstrom to face a significant risk of "surprise" rules or "surprise" fees. "Ambiguity concerning which set of [AAA

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION                -19-
Case No. 2:25-cv-2180-TL

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

rules applies presents procedural surprise" such that an arbitration agreement is rendered procedurally unconscionable. *MHN Gov't Servs., Inc.*, 306 P.3d at 954.

In such circumstances, procedural oppression is unnecessary for a finding of procedural unconscionability. *Id.* Procedural surprise suffices.

**C.    The entire arbitration agreement is unenforceable under the agreements' non-severability language.**

Both of the arbitration agreements that Nordstrom seeks to enforce include non-severability language (i.e., a "poison pill") that is implicated here. Specifically, the agreements expressly provide that if the Additional Procedures (or any of the requirements thereof) are determined to be unenforceable, then the entire arbitration agreement will be unenforceable:

> The Additional Procedures for Mass Arbitrations and each of its requirements are essential parts of this arbitration agreement. If, after exhaustion of all appeals, a court of competent jurisdiction decides that the Additional Procedures for Mass Arbitrations apply to your Dispute and are not enforceable, then your Dispute shall not proceed in arbitration and shall only proceed in a court of competent jurisdiction consistent with the remainder of the Terms.

Dkt. No. 20-1 at ECF p. 10; Dkt. No. 20-4 at ECF p. 13. As set forth above, the Additional Procedures are unconscionable and unenforceable under Washington law. As a result, under the agreements' express non-severability clause, Plaintiffs' claims "shall not proceed in arbitration and shall only proceed in [court]." *See Chalk v. T-Mobile, USA, Inc.*, 560 F.3d 1087, 1098 (9th Cir. 2009) ("[I]n the present case the arbitration agreement itself includes a provision prohibiting severance of [a term]. Therefore, in accordance with its severability clause, the arbitration agreement as a whole is unenforceable."); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 986-87 (9th Cir. 2007) (holding an "entire arbitration clause is void and arbitration cannot be compelled" where "arbitration provision has a nonseverability clause" and a clause is found unconscionable). Plaintiffs note that even if the Court were to find that only certain requirements of the Additional Procedures were unconscionable, that determination would still trigger the non-severability clause because that provision makes clear that the Additional

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION                    -20-
Case No. 2:25-cv-2180-TL

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Procedures "and each of its requirements" are "essential," non-severable parts of the arbitration agreement. Dkt. No. 20-1 at ECF p. 10; Dkt. No. 20-4 at ECF p. 13.[5]

**D.      The arbitration agreement is unenforceable in its entirety for the additional reason that the unconscionable terms permeate.**

Even if the arbitration agreements here did not include the above-quoted non-severability clause (they do), the arbitration agreements here would still be unenforceable in their entirety because unconscionable terms permeate them. Even in the absence of non-severability clauses, where substantively unconscionable terms "'pervade' an arbitration agreement, [Washington courts] 'refuse to sever those provisions and declare the entire agreement void.'" *Gandee*, 293 P.3d at 1999-1200 (quoting *Adler v. Fred Lind Manor*, 103 P.3d 773, 788 (Wash. 2004)). Unconscionable terms pervade an arbitration agreement if severing those terms would "significantly alter both the tone of the arbitration clause and the nature of the arbitration contemplated by the clause." *Id.* at 1201 (upholding denial of motion to compel arbitration because unconscionable provisions dominated an arbitration clause, and thus were not severable, despite defendant's offer to "waive" unconscionable provisions).

In *Gandee v. LDL Freedom Enterprises, Inc.*, the Washington Supreme Court held that the unconscionable provisions – a requirement that consumers move for arbitration within 30 days, a "loser pays" provision, and a venue provision that caused prohibitive costs—so permeated the agreement that severance of the provisions alone was impossible. *Id.* at 1200-02. Likewise, in *Hill v. Garda CL Northwest, Inc.*, the Washington Supreme Court agreed that the plaintiffs had "identified key provisions in the arbitration agreement that [were] substantively unconscionable," and that severing the clauses would "significantly alter[] both the tone of the

---

[5] While not raised by Nordstrom's motion to compel, the Nordstrom contracts here include class waiver provisions in the Dispute Resolution section. To the extent the class waiver is not part of the arbitration agreement and thus void under the non-severability clause of same (i.e., based on the unconscionability of the Additional Procedures), Nordstrom still would not be able to enforce it here (i.e., as a stand-alone class waiver) under Washington law. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007).

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION                    -21-
Case No. 2:25-cv-2180-TL

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

arbitration clause and the nature of the arbitration contemplated by the clause." 308 P.3d 635, 640 (Wash. 2013).

Here, even more so than in *Grandee* and *Hill*, the unconscionability permeates the entire arbitration agreement. Removing the unconscionable "staging" and related procedures and restrictions here would significantly alter the nature of what is contemplated by the clause. Read altogether, Nordstrom's arbitration agreement is pervaded by what appears to be Nordstrom attempting to "impose an 'inferior forum' on its customers." *See MacClelland*, 609 F. Supp. 3d at 1045-46 (considering the "number of unconscionable provisions, their nature, and the overall effect which is entirely foreseeable and intended," the court concluded that the *object* of the agreement was to "force Verizon consumers into an inferior (and, in many circumstances, wholly ineffective) forum.").

While the agreements' non-severability language renders this point essentially academic, this presents another reason why Nordstrom's arbitration agreement is unenforceable in its entirety.

## V.   <u>CONCLUSION</u>

The Court should deny Nordstrom's motion in its entirety.

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-22-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Dated: March 12, 2026

Respectfully submitted,

*I certify that this Opposition Memorandum contains 7,123 words, in compliance with the Local Civil Rules.*

/s/ Daniel M. Hattis
Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650
Fax: 425.412.7171

Roger N. Heller (*Pro Hac Vice*)
rheller@lchb.com
Daniel Hutchinson (*Pro Hac Vice*)
dhutchinson@lchb.com
John D. Maher (*Pro Hac Vice*)
jmaher@lchb.com
Courtney J. Liss (*Pro Hac Vice*)
cliss@lchb.com
Sara B. Evall (*Pro Hac Vice*)
sevall@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street,
29th Floor San Francisco,
CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

*Counsel for Plaintiffs
and the Proposed Class and Subclass*

OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-23-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com