THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEWEL LEE and MEGAN TRAMA, for themselves, as private attorneys general, and/or on behalf of all others similarly situated,

Plaintiffs,

v.

NORDSTROM, INC.,

Defendant.

Case No.  2:25-cv-2180-TL

**DECLARATION OF DANIEL M. HATTIS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT NORDSTROM, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

DECL. OF DANIEL M. HATTIS I.S.O.
OPPOSITION TO MOT. TO COMPEL ARB.
Case No. 2:25-cv-2180-TL

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## <u>DECLARATION OF DANIEL M. HATTIS</u>

I, Daniel M. Hattis, declare as follows:

1.     I am an adult more than 18 years of age, and I am not a party to this civil action. I make this declaration based upon my personal knowledge and, if called to do so, could and would testify competently to the following:

2.     I am an attorney-at-law and am a member in good standing of the Washington State Bar Association, the California State Bar, and the Bar of this Court. I am an attorney of record in this civil action representing Plaintiffs Jewel Lee and Megan Trama (collectively, "Plaintiffs").

3.     I have been an attorney since 2004, and I specialize in representing consumers alleging false advertising claims. I am the managing partner in the Seattle-area consumer rights law firm of Hattis Lukacs & Corrington. I have represented consumers in dozens of court actions and also in thousands of submitted arbitrations.

4.     In the past seven years, consumers have increasingly alleged their claims not in court but in the form of so-called "mass arbitrations."

5.     In a typical consumer arbitration, a consumer is bound by an arbitration agreement that is drafted by a business and is presented as a contract of adhesion. Among other provisions, the arbitration agreement contains a "class action waiver" that prohibits the consumer from pursuing his or her claims in a class action in court or in a class arbitration; instead, the arbitration agreement requires the consumer to pursue his or her claims only in individual arbitration.

6.     In a mass arbitration, hundreds or thousands of consumers with a similar claim (*e.g.*, a claim that a consumer was a victim of a deceptive advertising scheme) retain one law firm or a group of law firms to represent all of the consumers and to pursue each of their claims in individual arbitrations.

7.     When an arbitration agreement mandates individual arbitration and prohibits class

DECL. OF DANIEL M. HATTIS I.S.O. OPPO.
TO MOTION TO COMPEL ARBITRATION        -1-
Case No. 2:25-cv-2180-TL

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

actions and class arbitrations, then the filing of so-called mass arbitrations is a logical, predictable, and lawful response.

8. Businesses balk at mass arbitrations. They do not want to risk exposure to the liability on the merits from hundreds or thousands of individual claims; they do not want to pay their counsel to defend against so many individual claims; and they do not want to pay the fees to the arbitration provider and the arbitrator for so many individual claims.

9. As a result, some businesses have inserted so-called "mass arbitration provisions" into their arbitration agreements. Some of these provisions (like the one drafted by Defendant Nordstrom, Inc. ("Nordstrom") for its Nordstrom Rack customers) require a process of "batching" in which a smaller subset of selected individual arbitrations must proceed and be decided first while the other individual arbitrations are stayed or suspended.

10. In the case of Nordstrom, under both the Nordstrom Rack Terms & Conditions and Nordy Club Terms & Conditions (collectively, "Terms"; *see* Dkt. 20-1 and Dkt. 20-4), two batches of arbitrations (a first batch of 100 arbitrations, and a second batch of 200 arbitrations) are required, with a mandatory global mediation following the conclusion of each batch. Then, after this batching process, if the cases are not settled according to terms agreeable to Nordstrom, all the remaining claimants are *automatically opted out of arbitration* and those consumers must pursue their claims in court.

11. Here, in addition to representing the two named plaintiffs Jewel Lee and Megan Trama, my law firm also represents 1,955 other individual clients who, like Ms. Lee and Ms. Trama, desire to pursue their claims against Nordstrom for violation of Washington's Commercial Electronic Mail Act ("CEMA") and the Washington Consumer Protection Act (the "WCPA").

12. These additional 1,955 clients are absent class members of the putative class action pending in this Court. Attached as **Exhibit A** is a list of these 1,955 other clients. My law

DECL. OF DANIEL M. HATTIS I.S.O. OPPO.
TO MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-2-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

firm has notified Nordstrom of the claims of these 1,955 other clients via Notices of Dispute.[1]

13.    If this Court compels Ms. Lee's and Ms. Trama's claims to arbitration, then they, together with my 1,955 other clients (totaling 1,957 clients), will file their arbitrations as a group and will be compelled to engage in Nordstrom's mandated batched arbitration process. As described below, their claims will then be delayed for multiple years. And at most, after this long, drawn-out process, only 300 out of my total of 1,957 current clients could possibly have their claims arbitrated.

14.    Notably, it is uncertain **which** of my 1,957 clients will be part of the chosen 300 persons to have their claims arbitrated; those 300 persons must be selected and picked out of the group of 1,957 by Nordstrom and by claimants' counsel. *See* Terms at Dkt. 20-1 and Dkt. 20-4.

15.    As further described below, prosecuting even those first 300 cases in the two batches of arbitrations will almost certainly take over three years. Meanwhile, the other 1,657 clients will be required to stand by while their cases are delayed waiting for the two batches of arbitrations and the two mediations to conclude.

16.    The 1,657 remaining clients will then be required, pursuant to Nordstrom's Terms —at the end of this multi-year delay—to file their individual claims in **court**. By design, Nordstrom's Terms ensure that the only way for these clients to avoid this multi-year delay in prosecuting their claims is for them to submit to a settlement with Nordstrom on terms Nordstrom desires.

---

[1] On October 22, 2025, my law firm sent Nordstrom a Notice of Disputes letter on behalf of 680 of these clients, all of whom are consumers who fall within the Class or the Washington State Subclass defined in the Plaintiffs' Complaint. On March 11, 2026, my law firm sent Nordstrom a second Notice of Disputes letter on behalf of 1,275 additional clients who fall within the Class or Washington State Subclass, bringing to 1,955 the current total number of my clients (other than the two named Plaintiffs) seeking to pursue their CEMA claims against Nordstrom. As of March 11, 2026, my law firm has been contacted by an additional 4,858 prospective clients who have requested that I represent them regarding potential CEMA claims against Nordstrom regarding Nordstrom Rack emails, and my law firm is currently vetting those other prospects.

DECL. OF DANIEL M. HATTIS I.S.O. OPPO.
TO MOTION TO COMPEL ARBITRATION          -3-
Case No. 2:25-cv-2180-TL

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

17.     In fact, for the 1,657 claimants who are not selected as part of the first 300 in the batching process, Nordstrom's Terms are an agreement *not* to arbitrate

18.     In the past five years, I have represented consumers in multiple mass arbitrations before the American Arbitration Association ("AAA") in cases involving anywhere from hundreds, to tens of thousands, of clients in each mass arbitration.

19.     Below is a more detailed description of how Nordstrom's required batching process before the AAA will delay the prosecution of my clients' claims for multiple years.

20.     First, there will be a likely delay of one to two years before the first batch of merits arbitrations even begins, as a result of administrative issues and procedural disputes that must be resolved first.

21.     The AAA's mass arbitration rules allow for the appointment of a specialized arbitrator called a "process arbitrator" to resolve certain procedural disputes. Those procedural disputes include but are not limited to: (a) whether the parties have met the AAA's filing requirements, (b) whether the claimants have satisfied conditions precedent to arbitration, (c) whether the cases should proceed in small claims court, and (d) disputes regarding the payment of administrative fees, arbitrator compensation, or expenses. *See* AAA Rule MA-6, AAA Mass Arbitration Supplementary Rules (eff. April 1, 2024) (a true and correct copy of the Mass Arbitration Supplementary Rules (eff. April 1, 2024) are attached hereto as **Exhibit B** after being downloaded from https://www.adr.org/media/ofkbtyz2/mass-arbitration-supplementary-rules.pdf).

22.     In my experience, every single one of the numerous mass arbitrations I have litigated has begun with at least the first full year devoted to such procedural disputes before the process arbitrator.

23.     The resolution of each one of these procedural disputes by a process arbitrator can require substantial time. After one party requests the appointment of a process arbitrator, the process arbitrator will often schedule a conference call (often weeks into the future), establish a

DECL. OF DANIEL M. HATTIS I.S.O. OPPO.
TO MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL                    -4-

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

briefing schedule (allowing each side one or two months per brief), schedule a hearing, and issue a ruling (up to 30 more days, per Rule MA-6(g)). This process for each one of these procedural disputes can easily consume five or six months, often consumes the bulk of a year, and can on occasion consume more than one year. All the while, the arbitrations of the claims on their merits are stayed. While disputes are pending before the process arbitrator, the individual merits arbitrators are not appointed, preventing the first (or any) batch of merits arbitrations from proceeding.

24.     Then, after an AAA process arbitrator has issued a ruling on the currently pending dispute, a party can present the process arbitrator with yet another dispute—restarting the entire process and further preventing the merits arbitrations from commencing.

25.     By way of example of the delays these procedural disputes can entail, in one mass arbitration in which I participated, the AAA process arbitrator ultimately issued seven different rulings—consuming two years (from the process arbitrator's appointment in December 2023 to the issuance of the seventh ruling in December 2025). All of that took place before a single arbitration was sent to a merits arbitrator.

26.     Only then, after this likely one- or two-year delay resulting from these inevitable procedural disputes, can the first batch of 100 individual arbitrations against Nordstrom proceed to the merits arbitrators.

27.     This first batch of 100 arbitrations—even assuming all occurred simultaneously in parallel without further delay—would then likely take another eight to twelve months to litigate before each of the merits arbitrators. According to statistics compiled by the AAA, the *median* consumer arbitration administered by the AAA in 2024 took 8.5 months to result in an arbitration award. See AAA *Infographic: Consumer Dispute Resolution 2024* (a true and correct copy of which is attached hereto as **Exhibit C** after being downloaded from https://go.adr.org/rs/294-SFS-516/images/2024_Consumer_Dispute_Resolution_Infographic.pdf).  My own experience is consistent with these statistics; merits proceedings before merits arbitrators in false advertising

DECL. OF DANIEL M. HATTIS I.S.O. OPPO.
TO MOTION TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL

-5-

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

cases where I have served as counsel typically have taken between eight to twelve months to result in an arbitration award (and that excludes time spent on any preceding mass arbitration procedural disputes).

28.     After the initial one- to two-year delay in case administration and procedural disputes, and the additional (at least) 8.5 months to litigate the first 100 arbitrations before the merits arbitrators, the Nordstrom Terms then mandate a global mediation, which would likely delay the matters for another three months or so.

29.     And then, unless the cases were globally settled on terms agreeable to Nordstrom, the second batch of 200 arbitrations would go forward, taking at least another 8.5 months, plus another three months or so in delay from the second mandatory global mediation.

30.     Finally, after what is likely over three years in delays (i.e., procedural disputes before the process arbitrator, litigating the first batch of 100 arbitration on the merits, a global mediation, litigating the second batch of 200 arbitrations on the merits, a second global mediation), the remaining 1,657 of my clients (who may include the Plaintiffs in this case) will have to come back to this court to finally litigate their claims.

I declare under penalty of perjury under the laws of the United States of America that all of the foregoing is true and correct.

Executed in King County, Washington State, on March 12, 2026.

_____
DANIEL M. HATTIS

DECL. OF DANIEL M. HATTIS I.S.O. OPPO.
TO MOTION TO COMPEL ARBITRATION          -6-
Case No. 2:25-cv-2180-TL

HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, Washington 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com