THE HONORABLE TANA LIN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEWEL LEE and MEGAN TRAMA, for themselves, as private attorneys general, and/or on behalf of all others similarly situated,

Plaintiffs,

v.

NORDSTROM, INC.,

Defendant.

Case No. 2:25-cv-2180-TL

**NORDSTROM, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**NOTE ON MOTION CALENDAR:**

**April 23, 2026**

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 1

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT.......................................................................................................................2

    I.      Plaintiffs reaffirmed their assent to the Terms after Nordstrom filed its
Motion............................................................................................................2

    II.     Plaintiffs' unconscionability challenge is meritless..................................3

          A.      Nordstrom's arbitration provision is not substantively
unconscionable................................................................................3

                1.      Plaintiffs have not met their burden of showing undue
delay is likely. ..........................................................................3

                2.      Plaintiffs ignore the countervailing benefits of the
challenged clause. .....................................................................7

                3.      Plaintiffs' authorities are inapposite; the case law endorses
Nordstrom's approach................................................................7

                4.      Plaintiffs' other objections are baseless. .........................................9

          B.      The Terms' arbitration provision is not procedurally
unconscionable................................................................................10

          C.      The Federal Arbitration Act preempts Plaintiffs' interpretation of
Washington unconscionability law. ............................................12

CONCLUSION...................................................................................................................12

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - i

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..................................................................................................12

*Backmon v. Darden Corp.*,
2025 WL 1149646 (W.D. Wash. Apr. 18, 2025)..........................................................10

*Brooks v. WarnerMedia Direct, LLC*,
2024 WL 3330305 (S.D.N.Y. July 8, 2024) ..................................................................9

*Brown v. MHN Government Services, Inc.*,
178 Wn.2d 258 (2013) ................................................................................................11

*Burkhardt v. Extra Space Management, Inc.*,
2025 WL 2172287 (E.D. Cal. July 31, 2025) ...............................................................9

*Caimano v. H&R Block*,
2024 WL 3295589 (E.D. Pa. July 3, 2024)...................................................................8

*Chamber of Commerce v. Bonta*,
62 F.4th 473 (9th Cir. 2023) .......................................................................................12

*Corn v. Kohl's Corp.*,
2025 WL 1785943 (N.D. Cal. June 9, 2025)..................................................................2

*Diaz v. T-Mobile USA, Inc.*,
2026 WL 495233 (E.D. Cal. Feb. 23, 2026)..................................................................9

*Fama v. Opportunity Financial LLC*,
2023 WL 9954028 (W.D. Wash. Oct. 10, 2023) ......................................................4, 11

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
2025 WL 478178 (E.D. Pa. Feb. 12, 2025) ...................................................................6

*Goggins v. Amazon.com Inc.*,
2025 WL 2782872 (W.D. Wash. Sep. 30, 2025)............................................................3

*Gull Industries, Inc. v. Granite State Insurance Co.*,
18 Wn.App.2d 842 (2021) ..........................................................................................12

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024) .....................................................................................11

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - ii

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

*Hodges v. Comcast Cable Communications, LLC*,
  21 F.4th 535 (9th Cir. 2021) ...........................................................................................4

*Hoober v. Movement Mortgage, LLC*,
  382 F.Supp.3d 1148 (W.D. Wash. 2019)..........................................................................4

*Hunt v. Meta Platforms, Inc.*,
  729 F.Supp.3d 964 (N.D. Cal. 2024) ................................................................................8

*Jones v. Starz Entertainment, LLC*,
  129 F.4th 1176 (9th Cir. 2025) .........................................................................................4

*Kindred Nursing Centers Ltd. Partnership v. Clark*,
  581 U.S. 246 (2017)........................................................................................................12

*M.A. Mortenson Co. v. Timberline Software Corp.*,
  93 Wn.App. 819 (1999) ....................................................................................................7

*MacClelland v. Cellco Partnership*,
  609 F.Supp.3d 1024 (N.D. Cal. 2022) ...........................................................................7, 8

*McGrath v. DoorDash, Inc.*,
  2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ..................................................................8, 9

*Minton v. Intercontinental Terminals Co.*,
  2023 WL 11857612 (S.D. Tex. Sep. 12, 2023) .................................................................6

*Mosley v. Wells Fargo & Co.*,
  2023 WL 3185790 (S.D. Cal. May 1, 2023)......................................................................5

*Page v. GameStop Corp.*,
  2024 WL 1638989 (N.D. Ohio Apr. 16, 2024)..................................................................2

*Pandolfi v. AviaGames, Inc.*,
  2024 WL 4051754 (N.D. Cal. Sep. 4, 2024) .....................................................................8

*Park v. Express, LLC*,
  2021 WL 12310673 (M.D. Fla. Aug. 10, 2021) ................................................................2

*Pilon v. Discovery Communications, LLC*,
  769 F.Supp.3d 273 (S.D.N.Y. 2025).................................................................................9

*Puget Sound Financial, L.L.C. v. Unisearch, Inc.*,
  146 Wn.2d 428 (2002) ......................................................................................................7

*Raab v. Nu Skin Enterprises, Inc.*,
  28 Wn.App.2d 365 (2023) .................................................................................................3

*Reimer v. Center for Counseling & Health Resources*,
    2008 WL 2782899 (W.D. Wash. July 15, 2008) ...................................................................7

*Riensche v. Cingular Wireless, LLC*,
    2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ..................................................................5

*Rios v. HRB Digital LLC*,
    807 F.Supp.3d 975 (N.D. Cal. 2025) ...................................................................................8

*Romney v. Franciscan Medical Group*,
    186 Wn.App. 728 (2015) ...............................................................................................9, 11

*Ruiz v. CarMax Auto Superstores, Inc.*,
    2024 WL 1136332 (C.D. Cal. Jan. 18, 2024) ......................................................................9

*Scally v. PetSmart LLC*,
    2023 WL 9103618 (N.D. Cal. May 25, 2023) ....................................................................10

*State v. Brown*,
    92 Wn.App. 586 (1998) .......................................................................................................4

*Stevenson v. Sirius XM Radio Inc.*,
    2023 WL 7434945 (N.D. Cal. Nov. 9, 2023) ......................................................................4

*Torgerson v. One Lincoln Tower, LLC*,
    166 Wn.2d 510 (2009) ..................................................................................................3, 6, 9

*Vargison v. Paula's Choice, LLC*,
    2025 WL 346197 (W.D. Wash. Jan. 30, 2025)....................................................................2

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017) .....................................................................................11

*Woodall v. Avalon Care Center-Federal Way, LLC*,
    155 Wn.App. 919 (2010) ....................................................................................................5

*In re Zimmer M/L Taper Hip Prosthesis*,
    2021 WL 5963392 (S.D.N.Y. Dec. 16, 2021) ....................................................................5

*Zuver v. Airtouch Communications, Inc.*,
    153 Wn.2d 293 (2004) ........................................................................................................4

**RULE**

Wash. R. Prof'l Conduct, 1.7(a) ...........................................................................................4

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - iv

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

## OTHER AUTHORITIES

CPR Dispute Resolution Services, *Operating Principles*,
https://drs.cpradr.org/about/operating-principles-for-cpr-dispute-resolution-services-llc (last accessed Apr. 19, 2026) ...............................................................8

Michael W. McTigue Jr. & Meredith C. Slawe, *Private Power, Public Harm: The Coercive Dynamic of Mass Arbitration*, U.S. Chamber of Commerce Inst. for Legal Reform (Dec. 2025), https://instituteforlegalreform.com/wp-content/uploads/2025/12/Private-Power-Public-Harm-Web.pdf .......................................6

U.S. Judicial Panel on Multidistrict Litig., *Statistical Analysis of Multidistrict Litigation Under 28 U.S.C. §1407 Fiscal Year 2025* (2026), https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Fiscal_Year_2025_Statistical_Analysis.pdf .....................................6

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - v

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

**PRELIMINARY STATEMENT**

Plaintiffs do not deny that they agreed to the arbitration provision in Nordstrom's Terms, nor do they deny that it covers their claims. Even after Nordstrom moved to enforce that provision, Plaintiffs repeatedly reaffirmed their assent to those Terms. Plaintiffs cannot accept the Terms' benefits without honoring their obligations under the Terms. They should therefore be compelled to arbitrate their claims under the Terms' arbitration provision.

Should Plaintiffs elect to be part of a mass arbitration—rather than file their claims separately with the AAA or proceed in small claims court—there is no basis to hold that the arbitration provision's procedures for administering a mass arbitration are unconscionable. Those procedures are modeled after the federal courts' approach to multidistrict litigation (MDL) proceedings: the parties agree to arbitrate 100 cases simultaneously, then participate in a global mediation (at Nordstrom's expense) to try to resolve the remaining cases. If any remain, another 200 cases are arbitrated, followed by another mediation (again at Nordstrom's expense). If any cases remain, the consumers may proceed in court or, if everyone agrees, individual arbitrations. Plaintiffs do not identify any occasion where a court—let alone a court in this Circuit—declined to enforce an arbitration provision like this one.

Plaintiffs object that some consumers' arbitrations could be delayed if these procedures were hypothetically applied to their cases. But no mass arbitration is presently pending—and given Plaintiffs' counsel's misleading solicitations, it remains to be seen whether their putative clients truly intend to be part of a mass arbitration proceeding. And even if their counsel commenced one, Plaintiffs could be first in line. Plaintiffs have no standing to complain about hypothetical delay of other claimants' cases, and any such complaint would have no merit, because Nordstrom's procedures provide an efficient and more practical way to resolve so many cases. Courts use this type of process because it is a sensible means of resolving large numbers of cases. It is not unconscionable.

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 1

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

## ARGUMENT

### I.    Plaintiffs reaffirmed their assent to the Terms after Nordstrom filed its Motion.

Even after Nordstrom moved to compel arbitration, Plaintiffs reaffirmed their agreement to Nordstrom's Terms. *Vargison v. Paula's Choice, LLC*, 2025 WL 346197, at *2 (W.D. Wash. Jan. 30, 2025) (Lin, J.) (enforcing arbitration agreement against plaintiffs who reaffirmed their assent after defendant moved to compel). Accordingly, Plaintiffs cannot now dispute their agreement to the Terms' arbitration provision.

Nordstrom moved to compel on December 10, 2025, invoking the arbitration provision in the Terms, which Plaintiffs previously accepted by making purchases on Nordstrom Rack's website and earning Nordy Club rewards points. Mot. 5-10. Since then, both Plaintiffs have repeatedly reaffirmed their assent to the Terms, as recently as April 4, 2026 for Plaintiff Lee when logging into Nordstrom's website, and March 28, 2026 for Plaintiff Trama by earning rewards points on a purchase. Savage Reply Decl. ¶¶5-7.

Plaintiffs "cannot on one hand reap the rewards, discounts, and benefits afforded to [them] through" Nordstrom's program "and on the other hand, self-servingly reject one specific provision of" its Terms. *Page v. GameStop Corp.*, 2024 WL 1638989, at *6 (N.D. Ohio Apr. 16, 2024) (compelling arbitration; plaintiff "assented to the [defendant's terms], including the mandatory arbitration provision" through use of loyalty program); *accord Park v. Express, LLC*, 2021 WL 12310673, at *1 (M.D. Fla. Aug. 10, 2021) (plaintiff "affirmatively assented to…terms and continues to assent…by participating in the loyalty program"); *Corn v. Kohl's Corp.*, 2025 WL 1785943, at *2-3 (N.D. Cal. June 9, 2025) (plaintiff "knowingly exploited the Rewards Agreement and received benefits flowing directly from [it]"). Thus, Plaintiffs must honor their obligation under the Terms to arbitrate.

Plaintiffs do not dispute accepting the Terms, but assert a 2018 press release "contradict[s]" Nordstrom's evidence that Plaintiffs signed up for the program before 2018 because the release purportedly says that the program debuted in 2018. Opp. 4 n.1, 15 n.3. Not so. The press release

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 2

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

"announce[s] the *evolution* of [Nordstrom's existing] customer loyalty program, The Nordy Club," and explains it "incorporates the traditional point system and favorite benefits of its previous program." Savage Reply Decl. ¶3. Its 2018 name change is immaterial. In any event, Plaintiffs "offer no counter-declaration or evidence" contradicting Nordstrom's evidence of their enrollment, "only speculation," which "cannot create a genuine dispute of material fact." *Goggins v. Amazon.com Inc.*, 2025 WL 2782872, at *6 n.1 (W.D. Wash. Sep. 30, 2025).

**II.    Plaintiffs' unconscionability challenge is meritless.**

Even if the Court were to consider their unconscionability objection, Plaintiffs bear the burden of proving substantive or procedural unconscionability, *see Raab v. Nu Skin Enters., Inc.*, 28 Wn.App.2d 365, 396 (2023), and they have not met it here.

**A.    Nordstrom's arbitration provision is not substantively unconscionable.**

Plaintiffs argue that Nordstrom's mass arbitration procedures are substantively unconscionable because claimants whose cases are not resolved in the first two stages might have delayed hearings. But for a term to be substantively unconscionable, its "unfairness must truly stand out." *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 519 (2009). It must be "'[s]hocking to the conscience,' 'monstrously harsh,' and 'exceedingly calloused.'" *Id.* (citations omitted). Plaintiffs cannot demonstrate any such extremity here.

**1.    Plaintiffs have not met their burden of showing undue delay is likely.**

Plaintiffs' counsel asserts that, "[i]n [his] experience," it would take "three years" to finish the two stages and associated mediations for a mass arbitration. ECF 32 ¶15,22. That averment cannot carry Plaintiffs' burden for (at least) four reasons:

*First*, any such delay would be self-inflicted. Plaintiffs' counsel say they have recruited "1,955 other clients" to file arbitrations and have another "4,858 prospective clients" that they are still "vetting." *Id*. ¶12 & n.1. But they started soliciting claimants only *after* filing this action. Slawe Decl. ¶2 & Ex. 1. One of those putatively vetted claimants appears to be dead. *Id.* ¶3. That haphazard process "casts serious doubt over the true motivation underlying the mass arbitration

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 3

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

tactic deployed here, which appears to be geared more toward racking up procedural costs to the point of forcing [Nordstrom] to capitulate to a settlement than proving the allegations… to seek appropriate redress on the merits." *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1183 (9th Cir. 2025). Would-be class counsel's representation of potential class members while soliciting for arbitration claimants might also pose an ethical conflict. *See* Wash. R. Prof'l Conduct, 1.7(a); Slawe Decl. Ex. 10 ¶¶22, 24-25 (report of legal ethics expert opining that such simultaneous representation is prohibited).

*Second*, any hypothetical delay in arbitrating *other* claimants' cases is not germane here. Plaintiffs' cases could be resolved in the first stage if Plaintiffs' counsel elects to designate Plaintiffs for that stage, *see* ECF 32 ¶14, and Plaintiffs lack standing to complain about any delay other claimants might face. Under Washington law, even if "there may be other factual scenarios in which" a term "would be clearly unconscionable," Plaintiffs must show unconscionability "on the facts at bar." *Hoober v. Movement Mortg., LLC*, 382 F.Supp.3d 1148, 1160 (W.D. Wash. 2019). A "hypothetical concern does not render" an arbitration clause "substantively unconscionable." *Fama v. Opportunity Fin. LLC*, 2023 WL 9954028, at *8 (W.D. Wash. Oct. 10, 2023); *accord Stevenson v. Sirius XM Radio Inc.*, 2023 WL 7434945, at *4 (N.D. Cal. Nov. 9, 2023) (citing cases "declining to reach" unconscionability challenges to "provisions that do not apply to the plaintiff"). The Ninth Circuit has likewise advised courts not to "stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021). So too here.[1]

*Third*, even if other claimants' experiences were relevant, Plaintiffs have not shown that undue delay is likely. "[M]ere speculation" about "the potential but unknown effect of a particular provision in an arbitration agreement" does not prove "substantive[] unconscionab[ility]." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 311-12 (2004). Instead, the plaintiff must prove "the

---

[1] Plaintiffs note that unconscionability is assessed as when the "contract was made," not "by hindsight." Opp. 10. But that rule prevents a bargain that was fair *ex ante* from being undone because "subsequent" events made it a "bad bargain" for one party. *State v. Brown*, 92 Wn.App. 586, 602 (1998).

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 4

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA 98104-7029 |
Tel: 206.505.4000

likelihood" of the allegedly unconscionable result—e.g., the risk of incurring "prohibitively expensive" arbitral fees, *Woodall v. Avalon Care Ctr.-Fed. Way, LLC*, 155 Wn.App. 919, 936 (2010), or that "discovery" will be unfairly curtailed, *Riensche v. Cingular Wireless, LLC*, 2006 WL 3827477, at *9 (W.D. Wash. Dec. 27, 2006). Plaintiffs cannot show that here.

The first year of that hypothetical three-year delay purportedly results from the initial "administrative issues and procedural disputes that must be resolved first" by "the process arbitrator." Opp. 11. But process arbitrator proceedings are a creature of the AAA rules to assist it in the administration of mass arbitrations, ECF 32, Ex. B at MA-6, not Nordstrom's agreement.[2] Process arbitrators, like MDL special masters, hear threshold administrative issues, such as whether filing requirements have been met or whether the claimants are aware of or authorized the filing of arbitration demands. *E.g.*, *Mosley v. Wells Fargo & Co.*, 2023 WL 3185790, at *1 & n.2 (S.D. Cal. May 1, 2023) (process arbitrator challenge to deficient arbitration filings). That Plaintiffs' counsel might have spent "the first full year" of "every single one of the numerous mass arbitrations [he] has litigated" on such issues, ECF 32 ¶22, may suggest there are deficiencies in his recruitment of claimants, but not that Nordstrom's arbitration provision unconscionably delays arbitrations.

The remaining hypothetical delay is attributed to processing two rounds of cases and global mediations. Opp. 11-12. But that approach facilitates the swift resolution of all cases. It is similar to the process used in MDL proceedings "to 'promote the just and efficient' resolution of a large number of similar cases," where a subset of "bellwether trials" are conducted "'to provide data points for settlement discussions with respect to the universe of cases' within the MDL," while the other cases are stayed. *In re Zimmer M/L Taper Hip Prosthesis*, 2021 WL 5963392, at *1 (S.D.N.Y.

---

[2] The major arbitration providers have adopted carefully developed mass arbitration rules with similar procedures for administrative arbitrators to hear threshold issues unique to mass arbitrations. *See* Slawe Decl. Ex. 5 at 3-4 (JAMS); Ex. 6 at 2 (NAM); Ex. 7 at 4 (CPR). These basic procedures are essential for the providers' ability to administer mass arbitrations. The arbitration providers further encourage the parties to agree to additional procedures for the efficient resolution of mass arbitration demands. *See, e.g.*, Slawe Decl. Ex. 6 at 1 (NAM), Ex. 8 at 3 (AAA), Ex. 9 at 3 (JAMS).

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 5

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

Dec. 16, 2021) (citations omitted).[3] Courts have successfully used this approach to resolve many cases quickly. Since Congress passed the MDL statute in 1968, courts assigned such proceedings have remanded back to the originating courts only 1.3% of all consolidated cases.[4] Plaintiffs offer no reason why these disputes could not also be resolved quickly through Nordstrom's process, nor do they explain how a process modeled after one used by courts could be so "monstrously harsh" as to be unconscionable. *Torgerson*, 166 Wn.2d at 519.

*Fourth*, Plaintiffs have not shown that all claims would be resolved quicker without Nordstrom's mass arbitration procedures. They do not (and cannot) identify any real-world alternative allowing many thousands of arbitrations to be tried all at once. Not even the largest arbitration providers have that many arbitrators. Instead, under the AAA's rules, the AAA would assign those cases to a modest number of arbitrators, who would then hear each case individually. ECF 32 Ex. B at 8 (AAA Rule MA-7(c)). The cases would not be arbitrated all at once, but would almost certainly be staged, if not as efficiently as under Nordstrom's protocol. Plaintiffs also submit no evidence that their counsel actually could arbitrate more than 100 or 200 cases at a time. The two law firms representing Plaintiffs are purportedly handling over 1,300 active court cases. Slawe Decl. ¶6 & Ex. 4.

Nordstrom's process is actually faster than the bellwether process in federal courts. While Plaintiffs grumble that it could take three years to complete 300 arbitrations, in MDL proceedings, the first bellwether often is not even scheduled to begin until three years have passed. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 2025 WL 478178, at *5 (E.D. Pa. Feb. 12, 2025) (nine years before first bellwether); *Minton v. Intercontinental Terminals Co.*, 2023 WL 11857612, at *1 (S.D. Tex. Sep. 12, 2023) (four years). Statistics on cases tried in MDL proceedings since 2009

---

[3] *See also* Michael W. McTigue Jr. & Meredith C. Slawe, *Private Power, Public Harm: The Coercive Dynamic of Mass Arbitration*, U.S. Chamber of Commerce Inst. for Legal Reform 8, 95 n.181 (Dec. 2025), https://instituteforlegalreform.com/wp-content/uploads/2025/12/Private-Power-Public-Harm-Web.pdf (describing similarities of staging procedures to bellwether litigation and drawbacks such as complexity and delay inherent to MDL bellwether procedures that nevertheless tax scarce judicial resources).

[4] *See* U.S. Judicial Panel on Multidistrict Litig., *Statistical Analysis of Multidistrict Litigation Under 28 U.S.C. §1407 Fiscal Year 2025* at 3 (2026), https://www.jpml.uscourts.gov/sites/jpml/files/JPML_Fiscal_Year_2025_Statistical_Analysis.pdf.

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 6

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA 98104-7029 |
Tel: 206.505.4000

show they required a median of 1,546 days—over four years—to resolve.[5]

### 2. Plaintiffs ignore the countervailing benefits of the challenged clause.

In attacking Nordstrom's mass arbitration provision, Plaintiffs focus on its putative downsides without considering its benefits. Opp. 14. But under Washington law, courts assessing unconscionability consider the "totality of the circumstances," *Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 146 Wn.2d 428, 439 (2002), which requires considering the "business justification for the" challenged term, *Reimer Ctr. for Counseling & Health Res.*, 2008 WL 2782899, at *1 (W.D. Wash. July 15, 2008); *see also M.A. Mortenson Co. v. Timberline Software Corp.*, 93 Wn.App. 819, 836-37 (1999) (remedial limitation is not unconscionable because of its benefit in "making software affordable").

Here, Nordstrom's arbitration agreement addresses the relatively new mass arbitration tactic employed by certain plaintiffs' firms by creating an orderly, sensible process for resolving consumers' claims on the merits without subjecting Nordstrom to extortionate fee pressures. All parties benefit from the ability to review merits rulings on similar claims before global mediation, which promotes fair resolution of all claims. If any cases are not resolved after two stages and two global mediations, claimants may proceed in court (or arbitration, if the parties agree). Those benefits to all parties preclude a finding of substantive unconscionability. *See, e.g.*, *M.A. Mortenson Co.*, 93 Wn.App. at 836-37.

### 3. Plaintiffs' authorities are inapposite; the case law endorses Nordstrom's approach.

Plaintiffs rely on three distinguishable decisions invalidating different mass arbitration provisions (Opp. 12-16):

In *MacClelland v. Cellco Partnership*, 609 F.Supp.3d 1024 (N.D. Cal. 2022), cases could be filed only in batches of 10, with no opt-out of arbitration, which, according to the court, meant it would "tak[e] approximately 156 years to resolve" the 2,712 claims. *Id.* at 1040, 1042. Even

---

[5] Slawe Decl. Ex. 3 at 4 (citing federal district court MDL statistics obtained via Lex Machina).

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 7

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

worse, "[t]hose in the queue who are not able to file within the limitations period would be forever barred" because "[t]he clause contain[ed] no tolling provision." *Id.* at 1042. Here, Nordstrom customers awaiting arbitration would have the benefit of tolling, and only two stages must be completed—not an endless series—before all claimants may proceed, either in court or (if all agree) in arbitration.

*MacClelland* specifically distinguished the perpetual-staging approach that the court deemed unconscionable from limited-staging approaches like Nordstrom's, which it endorsed: "This case stands in stark contrast to *McGrath v. DoorDash*," which involved a "mass arbitration provision modeled off of the Employment-Related Mass Claims Protocol of the International Institute for Conflict Prevention & Resolution (CPR)." *Id.* at 1043 (quoting *McGrath v. DoorDash, Inc.*, 2020 WL 6526129, at *4 (N.D. Cal. Nov. 5, 2020)). CPR's rules are substantially similar to Nordstrom's mass arbitration provision, and were adopted in accordance with CPR's guiding principles of "[f]undamental [f]airness" and "[i]ndependence and [i]mpartiality."[6] They provide for the appointment of an Administrative Arbitrator (similar to the AAA's Process Arbitrator), a stage of initial cases that proceed to arbitration, mandatory mediation, and the right to opt out of arbitration if the remaining cases are not resolved after mediation. *See* Slawe Decl. ¶9 & Ex. 7. As *MacClelland* noted, that limited-staging approach "set[s] up a bellwether system to adjudicate a group of cases with the purpose of facilitating global or widespread resolution." 609 F.Supp.3d at 1044. It avoids "the possibility of significant delay." *Id.* at 1043.

In Plaintiffs' other two cases, the same judge who decided *MacClelland* was again concerned about perpetual staging of batches. *Rios v. HRB Digit. LLC*, 807 F.Supp.3d 975, 981 (N.D. Cal. 2025) (20 cases in first two stages, then 50 cases per stage);[7] *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *13 (N.D. Cal. Sep. 4, 2024) (20 cases per stage). However, other

---

[6] CPR Dispute Resolution Services, *Operating Principles*, https://drs.cpradr.org/about/operating-principles-for-cpr-dispute-resolution-services-llc (last accessed Apr. 19, 2026).

[7] Other courts have enforced the same arbitration agreement considered in *Rios* over unconscionability challenges. *Hunt v. Meta Platforms, Inc.*, 729 F.Supp.3d 964, 969-70 (N.D. Cal. 2024); *Caimano v. H&R Block*, 2024 WL 3295589, at *13 (E.D. Pa. July 3, 2024).

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 8

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA 98104-7029 |
Tel: 206.505.4000

courts have upheld perpetual-staging approaches where, as here, the statute of limitations is tolled and there is no proof of undue delay. *Diaz v. T-Mobile USA, Inc.*, 2026 WL 495233, at *1-2, *4 (E.D. Cal. Feb. 23, 2026); *Ruiz v. CarMax Auto Superstores, Inc.*, 2024 WL 1136332, at *6 (C.D. Cal. Jan. 18, 2024).

But more importantly, courts that have considered a limited-staging approach like Nordstrom's have upheld the agreement. *See Pilon v. Discovery Commc'ns, LLC*, 769 F.Supp.3d 273, 285, 297 (S.D.N.Y. 2025) (rounds of 50, 100, then 200 cases, followed by court or arbitration); *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at *17-18 (S.D.N.Y. July 8, 2024) (same); *McGrath*, 2020 WL 6526129, at *4 (one round of 10 cases, followed by court or arbitration); *accord Burkhardt v. Extra Space Mgmt., Inc.*, 2025 WL 2172287, at *5 (E.D. Cal. July 31, 2025) (one round of 10 cases, followed by batching, with all parties allowed to opt out of arbitration). Indeed, at least one judge recommended that parties involved in a mass arbitration use an approach like Nordstrom's to "actually get things moving" toward a resolution—namely, to agree to stay all but "5 to 10" "bellwether arbitrations," then discuss a global settlement. Slawe Decl. Ex. 2 at 38, 40. An approach that numerous judges have endorsed cannot be so "monstrously harsh" as to be substantively unconscionable. *Torgerson*, 166 Wn.2d at 519.

### 4.    Plaintiffs' other objections are baseless.

Plaintiffs' objections that the mass arbitration clause is "non-mutual," Opp. 13, and imposes a "penalty" on a consumer's choice of counsel, *id.* at 17, also lack merit.

*First*, mass arbitrations are intrinsically one-sided—they are brought by consumers against a company, never vice versa—but that does not mean that arbitration agreements cannot address them. "[S]ubstantive unconscionability does not concern" itself with "'whether the parties have mirror obligations under the agreement, but rather whether the effect of the provision is so "one-sided" as to render it patently "overly harsh."'" *Romney v. Franciscan Med. Grp.*, 186 Wn.App. 728, 742 (2015) (citations omitted). That is not the case here.

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 9

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

*Second*, it is true that mass arbitration procedures apply when a particular counsel files many cases, but that does not limit customers' choice of counsel. Opp. 16. Customers remain free to choose any counsel they wish. But if they choose the same counsel, the parties have agreed to take advantage of the resulting economies of scale from which all parties benefit:

> "[Y]ou understand and agree that these Additional Procedures for Mass Arbitrations will apply and that they are designed to (a) lead to the streamlined and cost-effective resolution of claims; (b) ensure that large volume filings do not impose unnecessary burdens or impediments to the resolution and cost-effective adjudication of similar claims; and (c) preserve the integrity of the arbitration process. You also understand and agree that by choosing to bring your Dispute as a part of a Mass Arbitration that the resolution of your Dispute might be delayed and ultimately proceed in court and not in arbitration. The parties agree that as part of these procedures, their counsel shall meet and confer in good faith in an effort to resolve the Disputes, streamline procedures, address the exchange of information, modify the number of Disputes to be adjudicated, and conserve the parties' and the AAA's resources."

ECF 20 Ex. 1 at 9.

In any event, the fact that choosing the same counsel as other claimants might marginally increase the likelihood that the consumer's claim will proceed in court rather than arbitration is not unconscionable. *See Scally v. PetSmart LLC*, 2023 WL 9103618, at *4 (N.D. Cal. May 25, 2023).

**B.      The Terms' arbitration provision is not procedurally unconscionable.**

Nor is the challenged clause procedurally unconscionable. "Procedural unconscionability exists if a party lacks a meaningful choice surrounding the making of the agreement…." *Backmon v. Darden Corp.*, 2025 WL 1149646, at *2 (W.D. Wash. Apr. 18, 2025). Here, Plaintiffs had a meaningful choice. They had 30 days to opt out of the mass arbitration clause after Nordstrom

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 10

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

informed them that the arbitration provision had been updated. ECF 19 ¶8. They chose not to opt out. "Courts in this State routinely find opt out provisions sufficient to defeat a claim of procedural unconscionability." *Fama*, 2023 WL 9954028, at *4. Indeed, Plaintiffs *reaffirmed* their assent to the arbitration provision after Nordstrom moved to compel. *Supra* §I.

Plaintiffs argue (Opp. 18) that Nordstrom's contractual right to update the Terms makes them procedurally unconscionable under *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024). But in *Heckman*, consumers could not opt out of changes. *See id.* at 681-84. There, unlike here, the defendant company putatively had a near-monopoly over live-event ticketing, and its change-in-terms provision made it "nearly impossible to avoid retroactive application of any changes [it] imposes." *Id.* at 678.[8] No such concerns exist here.

Plaintiffs' contention that their agreements are procedurally unconscionable because Nordstrom's arbitration provision "fail[s] to specify a specific set of AAA rules," Opp. 19, fares no better. Here, the AAA Consumer Arbitration Rules would clearly apply in a AAA arbitration because Plaintiffs are consumers suing over a consumer product.[9] The Ninth Circuit has noted that consumer agreements "referencing the AAA rules" need not say "which rules would apply" to avoid "procedural unconscionability" under Washington law. *Wiseley v. Amazon.com, Inc.*, 709 F.App'x 862, 864 (9th Cir. 2017). *Brown v. MHN Government Services, Inc.*, 178 Wn.2d 258, 267 (2013), on which Plaintiffs rely, involved a contractor agreement that was arguably either a commercial contract (governed by one set of AAA rules) or an employment contract (subject to a different set of AAA rules), and the defendant had "changed its position several times regarding which set of AAA rules is appropriate." *Id.* at 268. The court held that this "ambiguity" and the "drafter['s]" lack of "a consistent interpretation" established "procedural unconscionability." *Id.* But "[n]o such change of position or lack of clarity is present here." *Romney*, 186 Wn.App. at 737-

---

[8] Also, *Heckman* applied California law, *id.* at 681-84, and because "California is more likely to find procedural unconscionability" than Washington, "reliance on…California cases is misplaced." *Romney*, 186 Wn.App. at 739.

[9] Plaintiffs' feigned ignorance of AAA's Mass Arbitration Supplementary Rules, which would apply if a mass arbitration were filed, is undermined by their counsel's declaration attaching those Rules. ECF 32-2.

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 11

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

38 (reversing denial of arbitration even though agreement did not name a particular set of AAA rules).

In any event, Plaintiffs' election to assent to the Terms many times even after Nordstrom moved to compel arbitration is fatal to their challenge. *Supra* §I. Those reaffirmations obviate any need to consider whether their earlier agreements were procedurally unconscionable.

**C.    The Federal Arbitration Act preempts Plaintiffs' interpretation of Washington unconscionability law.**

Plaintiffs' unconscionability challenge also lacks merit because the Federal Arbitration Act (FAA) preempts Plaintiffs' interpretation of Washington unconscionability law.

*First*, "[t]he FAA…preempts any state rule discriminating on its face against arbitration," *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017), and Plaintiffs' purported rule against limited-staging procedures has been invented solely for arbitration agreements. Washington courts allow bellwether-type processes in court. *See, e.g.*, *Gull Indus., Inc. v. Granite State Ins. Co.*, 18 Wn.App.2d 842, 851-52 (2021) (describing bellwether trials). Washington has not adopted and could not adopt an "arbitration-specific" rule against using that process in arbitration. *Kindred*, 581 U.S. at 254.

*Second*, Plaintiffs' proposed rule would obstruct "the full purposes and objectives of Congress" in enacting the FAA, which was to "ensure the enforcement of arbitration agreements according to their terms" and "to promote arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-45, 352 (2011). Plaintiffs' rule improperly strips parties of their "discretion in designing arbitration processes" that are "tailored to the type of dispute," *id.* at 344-45, and would impermissibly deter companies from entering into arbitration agreements. *Id.* at 352; *see also Chamber of Commerce v. Bonta*, 62 F.4th 473, 486-87 (9th Cir. 2023).

**CONCLUSION**

The Court should grant Nordstrom's Motion and stay this action pending the resolution of arbitration.

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 12

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000

I certify that this memorandum contains 4,188 words, which is no more than 4,200 words, and is therefore in compliance with the Local Civil Rules.

Dated this 23rd day of April, 2026.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: s/Austin Rainwater
  Austin Rainwater, WSBA No. 41904
  Shannon Armstrong, WSBA No. 45947
  Abigail Gore, WSBA No. 62076
  701 Fifth Avenue, Suite 4700
  Seattle, Washington  98104
  Austin.Rainwater@hklaw.com
  Shannon.Armstrong@hklaw.com
  Abigail.Gore@hklaw.com
  Telephone: 206.505.4000
  Fax: 206.505.4099

  Michael W. McTigue Jr., admitted *pro hac vice*
  Meredith C. Slawe, admitted *pro hac vice*
  SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
  One Manhattan West
  New York, New York 10001
  Tel: 212.735.3534
  Fax: 917.777.3534
  michael.mctigue@skadden.com
  meredith.slawe@skadden.com

*Attorneys for Defendant Nordstrom, Inc.*

NORDSTROM'S REPLY ISO MOTION
TO COMPEL ARBITRATION
Case No. 2:25-cv-2180-TL - 13

HOLLAND & KNIGHT LLP
701 Fifth Avenue, Suite 4700
Seattle, WA  98104-7029 |
Tel: 206.505.4000